## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY ROBINSON,** | : | **CIVIL NO. 1:15-CV-1610** |
| | : | |
| **Plaintiff,** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **SCI CAMP HILL MEDICAL** | : | |
| **DEPARTMENT, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This case comes before us for an initial screening review. The *pro se* plaintiff, Gary Robinson, is a state inmate who was formerly housed at the State Correctional Institution (SCI) Camp Hill. (Doc. 3.) In his complaint, Robinson names one institutional defendant, the SCI Camp Hill Medical Department, and one individual defendant, Mr. Shoop. While Mr. Shoop is named in the caption of this case, Robinson's factual narrative contains no reference to any actions taken, or foregone, by Mr. Shoop.

Instead, Robinson's complaint describes a episode of what he believes to have been medical negligence. According to Robinson, in December 2013, he was

1

experiencing abdominal pain while housed at SCI Camp Hill. Robinson was seen several times over the course of a week by prison medical personnel, who prescribed a liquid diet for Robinson and placed him in the infirmary for 24 hours. Despite these medical precautions, Robinson's conditions dramatically worsened, allegedly due to an undiagnosed bowel obstruction. The plaintiff passed out while at the prison infirmary and was rushed outside the institution for emergency surgery and treatment. (<u>Id</u>.) Alleging that he has experienced significant pain and suffering due to the defendants' "medical negligence", Robinson demands $325,000 in compensatory damages. (<u>Id</u>.)

Along with his complaint, Robinson has filed a motion for leave to proceed *in forma pauperis*. (Doc. 1.) For the reasons set forth below, we will grant leave to proceed *in forma pauperis* in this case,  but as part of our legally-mandated screening review we find that the plaintiff has failed to state a claim  upon which relief may be granted. Therefore, we recommend that the Court dismiss the complaint without prejudice to the plaintiff endeavoring to address the legal deficiencies identified in this Report and Recommendation.

## II.    <u>Discussion</u>

### A.    <u>Screening of Pro Se Complaints–Standard of Review</u>

This Court has an on-going statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly,

550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d

212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In this regard, one of the basic requisites for a civil complaint is that it must recites some essential facts tying the defendants to some alleged misconduct. This fundamental requirement is driven both by matters of principle, and by pragmatic considerations. As a matter of principle and practice, a basic factual recital is essential in a complaint because it is simply impossible without such averments to properly assign individual responsibility to a particular defendant without some factual description of what has transpired. Therefore, it is incumbent upon a plaintiff to describe who he seeks to sue, and what these parties did that violated the plaintiff's rights. When a plaintiff fails in this basic responsibility, it is the duty of the court to dismiss his claims. See, e.g., Moss v. United States, 329 F. App'x 335 (3d Cir. 2009)(dismissing illegible complaint); Radin v. Jersey City Medical Center, 375 F. App'x 205 (3d Cir. 2010); Earnest v. Ling, 140 F. App'x 431 (3d Cir. 2005)(dismissing complaint where "complaint fails to clearly identify which parties [the plaintiff] seeks to sue"); Oneal v. U.S. Fed. Prob., CIV.A. 05-5509 (MLC), 2006 WL 758301 (D.N.J. Mar. 22, 2006)(dismissing complaint consisting of approximately 50 pages of mostly-illegible handwriting); Gearhart v. City of Philadelphia Police, CIV.A.06-0130, 2006 WL 446071 (E.D. Pa. Feb. 21, 2006) dismissing illegible complaint). Further, in order to satisfy the strictures of Rule 8, a complaint must also contain a coherent prayer for relief, demanding relief from a defendant that lies within the power of the defendant to provide. See Klein v. Pike Cnty. Comm'rs, CIV.A. 11-

278, 2011 WL 6097734 (M.D. Pa. Dec. 6, 2011)(failure to articulate a prayer for relief compels dismissal); <u>Snyder v. Snyder,</u> 4:12-CV-105, 2012 WL 512003 (M.D. Pa. Jan. 24, 2012) <u>report and recommendation adopted,</u> 4:12-CV-105, 2012 WL 511993 (M.D. Pa. Feb. 15, 2012)(same).

Applying these legal benchmarks, for the reasons set forth below, we conclude that this complaint is fatally flawed on multiple grounds and should, therefore, be dismissed, without prejudice to the plaintiff endeavoring to cure the legal deficiencies noted in this Report and Recommendation.

### B.   **This Complaint Fails to State A Claim Upon Which Relief Can Be Granted**

In this case, dismissal of this complaint is warranted because Robinson's complaint fails on numerous scores to meet the substantive standards required by law, in that it does not set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the Constitution or laws of the United States.

At the outset, this complaint fails to state any constitutional tort claim under the Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment of prisoners. To sustain such a claim, an inmate must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one

of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, an inmate is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of

resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. <u>See e.g.</u> <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; <u>see, e.g.</u>, <u>Ham v. Greer</u>, 269 F. App'x 149 (3d Cir. 2008); <u>James v. Dep't of Corrections</u>, 230 F. App'x

195 (3d. Cir. 2007); <u>Gillespie v. Hogan</u>, 182 F. App'x 103 (3d Cir. 2006); <u>Bronson v. White</u>, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); <u>Gindraw v. Dendler</u>, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

<u>James</u>, 230 F.App'x. at 197-198.(citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since

such determinations remain a question of sound professional judgment. <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (quoting <u>Bowring v. Godwin</u>, 551 F.2d 44, 48 (4th Cir. 1977)).

Here, Robinson's complaint does not state a claim of deliberate indifference to his medical needs. Rather, he alleges mere negligence, conduct which as a matter of law fails to state a constitutional tort claim. Therefore, to the extent that this complaint seeks to bring a federal civil rights claim under the Eighth Amendment, it fails to do so in its current form and should be dismissed.

Robinson's claims against the institutional defendant, the SCI Camp Hill Medical Department, are also unavailing as drafted. With respect to this institutional defendant, an agency of the Commonwealth of Pennsylvania, this *pro se* complaint runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials. First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the

state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). This proscription directly applies here. "Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, see Pa.Stat.Ann., tit. 71, § 61, it shares in the Commonwealth's Eleventh Amendment immunity. Such immunity, . . . , may be lost in [only] one of two ways: (1) if the Commonwealth waived its immunity; or (2) if Congress abrogated the States' immunity pursuant to a valid exercise of its power. See College Sav. Bank, 527 U.S. at 670, 119 S.Ct. 2219; Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 240-41, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)." Lavia v. Pennsylvania, Dept. of Corr., 224 F.3d 190, 195 (3d Cir. 2000).

Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. In this case, it is clear that Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the Commonwealth of Pennsylvania Department of Corrections, and the Commonwealth clearly has not waived its immunity. See Lavia v. Pennsylvania, Dept. of Corr., 224

F.3d 190, 195 (3d Cir. 2000). Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa.C.S.A. §8521(b). Thus, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, <u>See</u> 42 Pa.C.S.A. §8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa.C.S.A. §8521(b). Moreover, beyond these constitutional considerations, as a matter of statutory interpretation, the plaintiff cannot bring a damages action against the Commonwealth since it is also well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983, the principal federal civil rights statute. <u>Will v. Michigan Dep't. of State Police</u>, 491 U.S. 58, 71 (1989).

These basic legal tenets apply here and are fatal to these claims against the Commonwealth of Pennsylvania Department of Corrections Medical Department. In sum, this federal civil rights claim for damages against the Commonwealth of Pennsylvania Department of Corrections, Medical Department is barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute, 42 U.S.C. §1983. Therefore, since these state agencies cannot be sued in this fashion in federal court, these claims against this institutional

Commonwealth defendant should be dismissed. McWilliams v. Med. Dep't, No. 3:13-CV-2650, 2014 WL 60007, at *1 (M.D. Pa. Jan. 7, 2014).

Further, Robinson may not maintain a claim against the individual defendant, Mr. Shoop, as that claim is currently pleaded. At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them*. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, the complaint simply names a supervisory official in the caption of the case, and then seek to hold that official personally liable based upon the official's supervisory status without making any specific factual allegations about this defendant in the body of this pleading. To the extent that Robinson simply premises the liability of this defendant upon his supervisory status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of this defendant. Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

Moreover, to the extent that Robinson wishes to bring a medical negligence lawsuit under state law he must comply with the requirements of state law. In order to present a *prima facie* case of medical malpractice under Pennsylvania law, "as a general rule, a plaintiff has the burden of presenting expert opinions that the alleged act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought." Simpson v. Bureau of Prisons, No. 02-2213, 2005 WL 2387631, at *5 (M.D.Pa. Sept. 28, 2005) This requirement is imposed upon malpractice plaintiffs by Pennsylvania Rule of Civil Procedure 1042.3 which requires the filing a valid certificate of merit along with this malpractice claim or medical negligence claim.

Pa.R.C.P. No. 1042.3 ("Rule 1042.3") provides in pertinent part:

Rule 1042.3. Certificate of Merit

(a) In any action based upon an allegation that a licensed professionals deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

The requirements of Rule 1042.3 are deemed substantive in nature and, therefore, federal courts in Pennsylvania will apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim. Liggon-Reading v. Estate of Sugarman, 659 F.3d 258 (3d Cir. 2011); Iwanejko v. Cohen & Grigsby, P.C., 249 Fed.Appx. 938, 944 (3d Cir.2007); Ramos v. Quien, 631 F. Supp. 2d 601, 611 (E.D. Pa. 2008); Stroud v. Abington Memorial Hosp., 546 F.Supp.2d 238, 248 (E.D.Pa.2008) (noting that Pennsylvania federal courts "have uniformly held that the COM requirement is a substantive rule of law that applies in professional liability actions proceeding in federal court"). Thus, to the extent that the plaintiff wishes to

bring a medical malpractice action, a failure to comply with Rule 1042.3 is a bar to

this claim. In this regard, the controlling legal standards can be simply stated:

> Under Pennsylvania law, "[a] certificate of merit must be filed either with the complaint or within sixty days after the filing of the complaint in any action asserting a professional liability claim 'based upon the allegation that a licensed professional deviated from an acceptable professional standard." ' Smith v. Friends Hospital, 928 A.2d 1072, 1074-75 (Pa.Super.Ct.2007) (quoting PA. R. CIV. P. 1042.3). Federal courts have found that this rule constitutes state substantive law and thus applies in federal courts in Pennsylvania pursuant to Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 510 (E.D.Pa.2005) (citing Chamberlain v. Giampap, 210 F.3d 154, 158-61 (3d Cir.2000), which held that an analogous New Jersey statute was substantive law); Velazquez v. UPMC Bedford Mem'l Hosp.., 328 F.Supp.2d 549 (W.D.Pa.2004). Courts may dismiss cases when a plaintiff fails to file a required certificate of merit. See, e.g., Stroud v. Abington Mem. Hosp., 546 F.Supp.2d 238, (E.D.Pa.2008); Bresnahan v. Schenker, 498 F.Supp.2d 758, 762 (E.D.Pa.2007); McElwee Group, LLC v. Mun. Auth. of Elverson, 476 F.Supp.2d 472, 475 (E.D.Pa.2007) (holding that "failure to submit the certificate is a possible ground for dismissal by the district court, when properly presented to the court in a motion to dismiss).

Brownstein v. Gieda, No. 08-1634, 2009 WL 2513778, *3 (M.D.Pa. Aug. 13, 2009).

This requirement of state law applies with equal force to counseled complaints,

and to *pro se* medical malpractice actions brought under state law. See Hodge v.

Dept. of Justice, 372 Fed. App'x 264, 267 (3d Cir. 2010) (affirming district court's

dismissal of medical negligence claim for failure to file COM); Iwanejko v. Cohen &

Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007); Levi v. Lappin, No. 07-1839,

2009 WL 1770146 (M.D. Pa. June 22, 2009). Therefore, the plaintiff's status as a *pro*

*se* litigant cannot excuse him from compliance with the substantive state law when bringing this state law claim of malpractice. Id.

A plaintiff cannot satisfy this requirement by filing a document which recites in a talismanic fashion that it is a certificate of merit and then simply recites the text of Rule 1042.3. A certificate of merit must affirmatively demonstrate "either that (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or ... (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." Bresnahan v. Schenker, 498 F. Supp. 2d 758, 761-62 (E.D. Pa. 2007). Where a purported certificate of merit merely recites that the plaintiff possesses knowledge of his case, that filing does not comply with Rule 1042.3, and the plaintiff's malpractice claim may be subject to dismissal. Id. Similarly, a plaintiff may not satisfy Rule 1042.3 by merely acknowledging the requirement of the rule and promising to comply at some future time. Donnelly v. O'Malley & Langan, P.C., 3:CV-08-1945, 2009 WL 3241662 (M.D. Pa. Oct. 2, 2009) aff'd as modified sub nom. Donnelly v. O'Malley & Langan, PC, 370 F. App'x 347 (3d Cir. 2010). Furthermore, a pleading which simply parrots the language of Rule 1042.3 without any further substantive content is inadequate, and cannot save a malpractice claim from dismissal. Rodriguez v. Smith, CIV.A.03-3675, 2005 WL 1484591 (E.D. Pa. June 21,

2005)(dismissal without prejudice where Plaintiff files certificate that parrots Rule 1042.3 and concedes in the certificate that a licensed professional has not yet supplied the written statement required under Rule 1042.3(a)(1)).

Given the substantive nature of this requirement under Pennsylvania law, its clear application to medical malpractice claims, and the plaintiff's current failure to fully comply with the rule, it is recommended that this medical malpractice claim be dismissed. Although the plaintiff's failure to comply with Rule 1042.3 requires dismissal of this malpractice claim, we note that the sanction imposed under state law for a violation of this rule, entry of a non pros by the prothonotary, has no precise analogue in the federal system. Thus, courts have held in this context that "[u]nlike dismissal with prejudice, the entry of non pros is a default judgment that does not bar the plaintiff from commencing another suit based upon the same cause of action." Bresnahan v. Schenker, 498 F.Supp.2d 758, 762 (E.D. Pa. 2007)(quoting, Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 511 (E.D. Pa. 2004). Moreover, under Pennsylvania law, a party can seek relief from a non pros dismissing a case under Rule 1042.3, by coming into compliance with the rule, showing that there is a meritorious malpractice cause of action, and providing a reasonable explanation or legitimate excuse for then earlier non-compliance. See Womer v. Hilliker, 208 A.2d 269 (2006), see also Pa.R.C.P. No. 3051. Therefore, "[w]hen a plaintiff has failed to submit a certificate or merit or otherwise indicated that he has retained an expert witness, it is appropriate for a federal district court to dismiss his professional malpractice claim without

prejudice. See Lopez v. Brady, Civil No. 4:CV-07-1126, 2008 WL 4415585, at *14 (M.D.Pa. Sept.25, 2008) (dismissing FTCA medical malpractice claim without prejudice); Henderson v. Pollack, Civil No. 1:CV-07-1365, 2008 WL 282372, at *5 (M.D.Pa. Jan.31, 2008) (dismissing state law medical malpractice claim); Hartman v. Low Sec. Correctional Ins. Allenwood, No. 4:CV-04-0209, 2005 WL 1259950, at *5 (M.D.Pa. May 27, 2005) (same)." Donnelly v. O'Malley & Langan, P.C., 3:CV-08-1945, 2009 WL 3241662 (M.D. Pa. Oct. 2, 2009) aff'd as modified sub nom. Donnelly v. O'Malley & Langan, PC, 370 F. App'x 347 (3d Cir. 2010).

In short, the plaintiff may still have recourse to the courts on this claim, if he can file a proper certificate of merit and "demonstrate a reasonable explanation or legitimate excuse for untimely filing." Ramos v. Quien, 631 F. Supp. 2d 601, 612 (E.D. Pa. 2008). However, until the plaintiff takes these steps, and complies with Rule 1042.3, we should dismiss this state tort medical malpractice claim.

Finally, we note that this proposed disposition of the plaintiff's primary legal claims, in turn, suggests the appropriate course for the court to follow in addressing any ancillary state law claims that the plaintiff may wish to pursue against these defendants. In a case such as this, where the jurisdiction of the federal court was premised on alleged federal claims which are found on an initial screening to be subject to dismissal, the proper course generally is for "the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. §

1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." Bronson v. White   No. 05-2150, 2007 WL 3033865, *13 (M.D.Pa. Oct. 15, 2007)(Caputo, J.)(adopting report and recommendation dismissing ancillary malpractice claim against dentist); see Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008)("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains. In addition, the District Court did not abuse its discretion in declining to address the state law negligence claims. 28 U.S.C. § 1367(c)(3); see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir.1976).") Here, we have found that the federal claims set forth in this complaint are subject to dismissal. In these circumstances, we should decline to exercise pendant jurisdiction over any state law claims the plaintiff wishes to pursue.

While this screening merits analysis calls for dismissal of this action in its current form we recommend that the plaintiff be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint setting forth well-pleaded claims. We recommend this course mindful of the fact that

in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>see</u> <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court, by filing an amended complaint containing any timely and proper claims which he may have.

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, the Plaintiff's motion for leave to proceed *in forma pauperis* is GRANTED  but  IT IS RECOMMENDED that the Plaintiff's complaint be DISMISSED without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties,

written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of August, 2015.


*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge